People of the State of Illinois, Plaintiff-Appellee, v. David S. Pruitt and Walter L. Smith, Defendants-Appellants.

Gen. Nos. 54,206, 54,207.

First District, First Division.

September 21, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Ronald P. Katz and James J. Doherty, Assistant Public Defenders, of counsel), for appellants.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Arthur L. Belkind, Assistant State's Attorneys, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

The defendants, David S. Pruitt and Walter L. Smith, were jointly indicted for the offense of robbery and in a trial without a jury were found guilty as charged. Defendant Smith was sentenced to the penitentiary for a term of not less than one nor more than three years. Defendant Pruitt, after a hearing in aggravation and mitigation, was sentenced to the penitentiary for a term of not less than three nor more than eight years. They now bring this appeal.

The defendants contend that (1) they were not proven guilty beyond a reasonable doubt and (2) it was reversible error for the prosecutor and the trial judge to shift the burden of proof to the defendant Smith and require him to present proof of his innocence.

The record reveals that Albert Caldwell entered a restroom in Washington Square Park at about 4:30 p. m. on September 15, 1968. He testified that the defendants, Smith and Pruitt, then entered the restroom and assaulted him with their fists. He had never seen them before, but observed them to be Negro men of about twenty-five years of age, wearing tee shirts and work clothes. He said that Pruitt took his wallet, which contained personal effects, a driver's license and four dollars, from his rear left-hand pocket. Caldwell followed the defendants out of the washroom and observed them take the contents out of his wallet and then throw it to the ground, where he recovered it while they walked away. He then signalled to a police car, and the officer apprehended the defendants. He heard Smith scream, "I won't go back to jail. You'll have to shoot me."

Officer Dennis Kotsos testified that as he was proceeding north on Dearborn alone in a marked squad car, he

observed Caldwell holding his head and pointing to the two defendants. He saw the defendants going through a black object. When they saw him they dropped the object and started walking hurriedly away. He apprehended them and found nothing on them. Caldwell told them that the two men had robbed him. Pruitt, when apprehended, told him that he had just been robbed himself. Officer Kotsos said that he was having trouble with the defendants and had to draw his weapon and radio for help. While he was on the radio he saw Mrs. Smith take Smith's wallet and some loose dollar bills from the back of the squad car and then leave the scene. Smith told him that he was not going back to jail. At the police station Caldwell showed him his wallet. Officer Kotsos described it as being a black checkerboard wallet with ribbing. The wallet placed in evidence was dark brown with no checkers or ribbing.

Walter Lee Smith was the only witness for the defense. He testified that he was in Washington Square Park four blocks from his home with his wife when Pruitt, whom he had never seen before, approached them and told them he had just been robbed. Smith said that he saw Officer Kotsos, motioned to him and then told him about Pruitt being robbed. Caldwell then joined them and told Kotsos that Smith and Pruitt had robbed him. Smith testified that he did not strike Caldwell or take his wallet. He denied that his wife took a wallet off the police car. Smith said that he told Kotsos, "Officer, the way I feel right now, you'll have to kill me, because this is a brother. And if you want to mess us up with a robbery that none of us have any knowledge about, I feel you're wrong."

It is first contended that the doubtful and uncorroborated testimony of the complainant was insufficient to sustain the convictions. In furtherance of this argument, the defendants stress that they were apprehended only moments after the alleged robbery, but were not in possession of any property taken from Caldwell. There were also conflicting statements by the police officer concerning the description of Caldwell's wallet. It is urged that the conduct of the complainant was incon-

sistent with that of a man who has just been robbed and that although Caldwell testified that he had been beaten, Officer Kotsos found no marks or bruises on him. The defendants contend that if either of them had participated in the robbery it would have been unreasonable for them to have initially complained to Kotsos of the Pruitt robbery. These factors, the defendants say, create a reasonable doubt of their guilt and warrant a reversal.

The defendants rely on People v. Kincy, 72 Ill App2d 419, 219 NE2d 662; People v. Fiorita, 339 Ill 78, 170 NE 690 and People v. Kidd, 410 Ill 271, 102 NE2d 141. In Kincy the identification was doubtful and the other proof of guilt was very weak. In Fiorita the identification was vague and uncertain, and defendant had a strong alibi. In Kidd the identification was improbable and inconsistent and defendant had a credible alibi.

In the case at bar, the complaining witness had a good opportunity to view the defendants during the robbery and then followed them out of the restroom. He and Officer Kotsos saw them go through his wallet and then drop it. While Officer Kotsos apprehended the defendants, Caldwell recovered his wallet. The recovery of the wallet which Kotsos had seen them drop, within the vicinity of the defendants' arrest was substantial corroboration of Caldwell's identification of the defendants as the perpetrators of the crime. People v. Palmer, 120 Ill App2d 471, 477, 257 NE2d 172, 175.

This was a bench trial and it was for the judge to weigh the testimony of the witnesses and to determine their credibility. He found the testimony of Caldwell and Kotsos to be clear and convincing and that of Smith to be improbable. We have not been convinced that the proof was insufficient to establish the defendants' guilt beyond a reasonable doubt, and we will, therefore, not disturb the judgment of the trial judge.

It is next contended that the prosecutor and the trial judge committed reversible error by shifting the burden of proof to the defendant Smith and requiring him to present proof of his innocence. This argument is premised on the cross-examination of Smith by the prosecu-

tor and questions put to Smith and other comments made by the trial judge.

On direct examination, Smith testified that he was walking in the park with his wife, when Pruitt told him he had been robbed. On cross-examination, Smith said that his wife was in court that morning and that there were other friends of his with him in the park, until the time of his arrest. He mentioned Johnnie, Jimmy Dale and his wife and two children. He did not know Johnnie's last name. He said they were with him when Pruitt said he had been robbed.

The Court then inquired:

> The Court: "Were they all there when the defendant Pruitt came up with Mr. Smith and said he had been robbed? Is that what you asked him."
> Mr. Rimland (prosecutor): "Yes."
> The Witness: "Yes."
> The Court: "They were all there?"
> The Witness: "Yes, they were all there."
> Mr. Rimland: Q. "Is Johnnie here in court today?"
> A. "No, he isn't."
> Q. "What about Jimmie Dale and his wife Susie?"
> A. "No."
> Q. "Do you know where they are?"
> A. "Yes, I know where they are."
> Q. "Where are they now?"
> A. "They're living in—they're living at approximately Goethe and Wells."

We fail to see how this inquiry remotely shifted the burden to the defendant to prove his innocence. The State may test the defendant's credibility by questioning him on who was with him. This case is distinguishable from People v. Smith, 74 Ill App2d 458, 221 NE2d 68, where the prosecutor made highly prejudicial comments to the jury on the defendant's failure to call witnesses who were also available to the State  The instant case was a bench trial in which no such comments were made and in which it does not appear that Smith's friends were readily available to the State as witnesses.

■■ The trial judge in finding the defendants guilty concluded that the testimony of the defendant Smith was improbable and that he could not accept that story. He also commented that although Smith said he knew where friends were who could substantiate his story he did not call them. We do not agree with the defendants that this shows that the prosecutor persuaded the trial judge that the defendants had to produce evidence of their innocence. This is not a case like People v. Weinstein, 35 Ill2d 467, 220 NE2d 432, where the prosecutor in final argument of a jury trial repeatedly asserted that to be found not guilty the defendant had the burden of introducing evidence creating a reasonable doubt of his guilt. This case is more like People v. Kennedy, 98 Ill App2d 304, 240 NE2d 721, in which the Appellate Court held that where the accused undertakes to prove that at the time of the charged offense he was at another place with a number of people, his failure to produce such witnesses is a proper subject for comment by the prosecutor in closing argument. The testimony for the prosecution was strong and convincing. The defendant Smith chose to testify in his own defense and told a story which the trial judge found to be bizarre. We find no error in the questions or comments of the prosecutor or of the trial judge.

The judgment of the Circuit Court is, therefore, affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.